**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **Association of Jewish Camp Operators**, | ) | |
| | ) | |
| **Samuel Werzberger, MD, FAAP**, | ) | |
| | ) | |
| **Ariela Orkaby, MD, MPH**, | ) | |
| | ) | |
| **Beth Statfeld**, | ) | |
| | ) | |
| **Gail Zahtz**, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *v.* | ) | Case No. 1:20-CV-0687 (GLS-DJS) |
| | ) | |
| **Andrew M. Cuomo**, Governor of the | ) | |
| State of New York, in his official capacity, | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

I.      Plaintiffs Are Likely to Succeed on Their Claims ............................................................. 4

      A.      Defendant's Refusal to Accommodate Jewish Overnight Camps ......................... 4

      B.      The Prohibition of Overnight Camps Is Not Neutral ............................................ 8

II.     Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief .................................. 9

III.    The Balance of the Hardships and the Public Interest Favor Plaintiffs .......................... 10

IV.    Defendant Is Not Entitled to Legislative Immunity........................................................ 10

CONCLUSION................................................................................................................... 11

# TABLE OF AUTHORITIES

CASE                                                                                  Page(s)

*Cent. Rabbinical Cong. of the U.S. v. N.Y.C. Dep't of Health & Mental Hygiene*,
    763 F.3d 183 (2d Cir. 2014)..........................................................................4, 8

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993)..................................................................................4, 6, 7, 8

*City & Cty. of San Fran. v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) ......................................................................10

*Clark v. Cuomo*,
    66 N.Y.2d 185 (1985) ....................................................................................10

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................................10

*Jacobson v. Commonwealth of Massachusetts*,
    197 U.S. 11 (1905)............................................................................................9

*Levine v. Whalen*,
    39 N.Y.2d 510 (1976) ....................................................................................10

*N.Y. Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013)..........................................................................10

*Phillips v. City of New York*,
    775 F.3d 538 (2d Cir. 2015)............................................................................9

*Ramsek v. Beshear*,
    2020 U.S. Dist. LEXIS 110668 (E.D. Ky. June 24, 2020) ......................................6

*Rapp v. Carey*,
    44 N.Y.2d 157 (1978) ....................................................................................10

*Roberts v. Neace*,
    958 F.3d 409 (6th Cir. 2020) ....................................................................7, 8, 9

*Soos v. Cuomo*,
    2020 U.S. Dist. LEXIS 111808 (N.D.N.Y. June 26, 2020)............................ *passim*

*S. Bay United Pentecostal Church v. Newsom*,
    2020 U.S. LEXIS 3041 (May 29, 2020) ..................................................................9

**OTHER AUTHORITY**

U.S. CONST. amend. I ............................................................................................. *passim*

N.Y. CONST. art. III, § 1 ....................................................................................... 10

## INTRODUCTION

Defendant's opposition brief mirrors the State's approach to COVID-19 gathering and closure restrictions: dismissive of religious practices while favoring secular activities that pose greater health and safety risks.  Defendant suggests that Plaintiffs should be content to exercise their religious rights "next summer" or in another, less intensive manner, of Defendant's choosing. Defendant asserts that his infringement of Plaintiffs' religious rights thus is only "incidental."  Of course, Defendant has not suggested that protesters assemble next summer, or in a more muted fashion, presumably because he believes such limitations would be anything but "incidental."

The undisputed evidence is that Jewish overnight camps form a "unique" and "critical facet of the development and growth of the Jewish community," Frischman Decl. ¶¶ 6,8, thereby instilling Jewish values and beliefs in a manner "not readily available outside the overnight camp environment," Schwartz Decl. ¶ 9.  Yet Defendant gives no weight whatsoever to this critical religious activity.  Defendant does not value it, and therefore sees no reason to accommodate it.

Defendant imposed blanket gathering restrictions on all activity, and then carved out exceptions from those restrictions.  He made exemptions for First Amendment conduct he favors, despite its risk of the "transmission of COVID-19," Schick Decl., Ex. A at 1.  Defendant also has exempted comparable secular activity, such as day camps and higher education, allowing these activities to operate under health guidelines.  Yet Defendant has not afforded a similar exemption from his blanket restrictions to Jewish overnight camps, even though Defendant admits by silence that permitted secular activity is at least as susceptible to COVID-19 as are Jewish overnight camps, *see* Pls. Br at 8–11. And Defendant's enforcement of his restrictions by refusing to exempt overnight camps singles out religious activity for discrimination, as the undisputed evidence shows that at the time of the announcement only Jewish overnight camps were planning to operate.

Last Friday, in *Soos v. Cuomo*, 2020 U.S. Dist. LEXIS 111808, Judge Sharpe found two separate and distinct bases to enjoin Defendant's gathering restrictions.  First, Judge Sharpe found that the enforcement of Defendant's restrictions were not generally applicable because they imposed less restrictive capacity limitations to comparable secular activity.  *Id.* at *29–30. Reasoning that these "secular businesses/activities threaten defendants' interest in slowing the spread of COVID-19 to a similar or greater degree than those of [houses of worship]," Judge Sharpe concluded that Defendant's exemptions show that the "indoor capacity limitation on houses of worship is underinclusive and triggers strict scrutiny review."  *Id.* at *30.  Judge Sharpe also found that Defendant's "de facto exemption" for "mass race protestors . . . sent a clear message that mass protests are deserving of preferential treatment" to religious conduct.  *Id.* at *30–33. Second, Judge Sharpe concluded that the challenged indoor limitation triggers strict scrutiny because it "applies only to houses of worship."  *Id.* at *29.  Judge Sharpe held that the restrictions likely failed strict scrutiny, finding the State made "no attempt to" satisfy the standard.  *Id.* at *33.

Judge Sharpe rejected Defendant's contention, asserted again here, that there is no irreparable harm where the plaintiffs "are only being required to [exercise their religious rights] in a different way," reasoning that "the loss of plaintiffs' free exercise rights is alone adequate to demonstrate irreparable injury here."  2020 U.S. Dist. LEXIS 111808, at *33–34.  Judge Sharpe likewise found that the equities favored the plaintiffs, as "religious activities will be burdened and continue to be treated less favorably than comparable secular activities" absent injunctive relief, while the grant of such relief "does not undercut defendants' interest in controlling the spread of COVID-19, provided that plaintiffs abide by social distancing guidance."  *Id.* at *34. Judge Sharpe also concluded that relief would serve the public interest in treating "similarly situated entities in comparable ways" while "preserv[ing] bedrock free-exercise guarantees."  *Id.* (citation omitted).

Defendant attempts to cast Judge Sharpe's decision as "not applicable" to this case, Def. Br. 19, but Judge Sharpe's application of Free Exercise Clause caselaw underscores that Defendant's refusal to accommodate Jewish overnight camps is *more* discriminatory than his unlawful restrictions at issue in *Soos*.  As in *Soos*, Defendant's refusal to accommodate Jewish overnight camps from his restrictions triggers strict scrutiny for two *independent* reasons.  First, Defendant's refusal to accommodate Jewish overnight camps is subject to strict scrutiny because of Defendant's de facto exemption *from the same gathering and closure restrictions* for mass protests and his other widespread exceptions for comparable secular activity.  Second, Defendant's closure of overnight camps while permitting day camps and higher education dormitories singles out religious conduct for discrimination, as Defendant cannot dispute that *only* Jewish overnight camps were attempting to operate this summer by the time of Defendant's announcement.

Defendant's disrespectful dismissal of Plaintiffs' sincerely held religious beliefs of Jewish overnight camps as an "essential component" of their "children's educational and religious growth and wellbeing," Pls. Br. 7–8, 23, by suggesting they can wait until "next summer," Def. Br. 22, highlights Defendant's inability to see First Amendment Free Exercise rights in the same light as the First Amendment rights exercised by the mass protests.  And religious activity is further discriminated against by the exemption of the comparable secular conduct of day camps and higher education dormitories while refusing to accommodate Jewish overnight camps that are just as safe.

Defendant does not dispute that the safety protocols proposed by the overnight camps would curb transmission of COVID-19.  *See* Pls. Br. 8–11, 24–25.  Nor does Defendant attempt to explain why the guidelines issued by the State for comparable secular conduct, summarized below in the table on page 7, would not work for overnight camps.  Requiring that comparable religious and secular conduct are treated similarly promotes both religious rights and the public interest.

**ARGUMENT**

**I.    Plaintiffs Are Likely to Succeed on Their Claims**

Plaintiffs are likely to succeed on their Free Exercise Clause challenge for two independent reasons.  First, as in *Soos*, Defendant's refusal to accommodate Jewish overnight camps is subject to strict scrutiny because Defendant's exemptions *from the same restrictions* for other First Amendment activity and comparable secular conduct that pose greater risks shows that religious practice is being treated disfavorably as compared to secular conduct.  *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993).  Second, as with *Soos*'s indoor restrictions, Plaintiffs have shown that Defendant's refusal to accommodate overnight camps is not neutral because only Jewish camps were attempting to operate this summer by the time of the announcement, and the ban thus "is specifically directed at [a] religious practice."   *Cent. Rabbinical Cong. of the U.S.  v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (citation omitted).

In *Central Rabbinical*, the City of New York argued that it was motivated solely by health concerns (transmission of neonatal herpes), just as here Defendant asserts that his decisions are driven by concerns of transmission of COVID-19.  The Second Circuit nevertheless held that strict scrutiny applied because the restrictions focused on religious activity while ignoring similar risks flowing from secular conduct.  *Id.* at 195–96.  That is precisely what Defendant has done here, barring Jewish overnight camps because of a suspected risk of COVID-19 while exempting mass protests entirely and permitting similar secular activity, such as day camps and higher education.

**A.    Defendant's Refusal to Accommodate Jewish Overnight Camps**

Defendant's refusal to accommodate Jewish overnight camps violates the First Amendment because Defendant has exempted more dangerous protests and comparable or more

dangerous secular conduct from the same restrictions.   Defendant's opposition papers do not even attempt to argue that protests are less dangerous than are Jewish overnight camps, a concession by silence that ensures Plaintiffs' success on the merits.

Defendant has exempted mass protests from his gathering restrictions.   Pls. Br. 5–6. Although Defendant argues he has not exempted protests, Def. Br. 19, as Judge Sharpe concluded in *Soos* Defendant has "applauded and encouraged protesting," thereby "likely demonstrat[ing] the creation of a de facto exemption," 2020 U.S. Dist. LEXIS 111808, at *31; *see also* Pls. Br. 5– 6.  Defendant's argument that mass protests "bear no relation to overnight summer camps," Def. Br. 19, is inapposite.  Defendant's exemption is from the *same* gathering restriction from which he refuses to accommodate Jewish overnight camps, designed to curb transmission of COVID-19.

No sufficient justification exists for treating these activities differently, as the undisputed evidence before this Court establishes that mass protests raise *greater* concerns as to the spread of COVID-19 than do isolated overnight camps that have implemented rigorous safety protocols. Pls. Br. 16.  Defendant fails to challenge Plaintiffs' evidence that the Jewish overnight camps' protocols, which include pre-camp antibody and COVID-19 testing, in addition to other training, monitoring, and sanitization requirements, are safe.   Pls. Br. 10–11.  This means that the *undisputed evidence before the Court* is that Jewish summer overnight camps are *safer* than mass protests that, as Defendant concedes, have "no social distancing" with individuals "right in [each other's] face," Schick Decl., Ex. E at 15; *see also id.* at 29, 34.  Or, as the Eastern District of Kentucky court reasoned last week, "certain attributes of political protests [ ] make it inherently more difficult to contain spread of the coronavirus; they are organic, there is little ability to monitor who comes and who goes, people travel out of their communities to attend, and people who are

impassioned tend to shout, sing, and embrace," *Ramsek v. Beshear*, 2020 U.S. Dist. LEXIS 110668, at *29 (E.D. Ky. June 24, 2020).

Defendant's widespread exemptions for secular conduct that is comparable to, or in many cases, less safe than Jewish overnight camps, likewise show that Defendant's refusal to accommodate these camps is because he has "judg[ed] them to be of lesser import than nonreligious reasons." *Lukumi*, 508 U.S. at 537–38.  Defendant exempts day camps and child care services.  Pls. Br. 4–5, 17.  Defendant now allows higher education and "low-risk" indoor and outdoor arts and entertainment to open in Phase Four regions, in which he also permits gatherings of up to 50 people and indoor religious gatherings of up to 33% capacity.  Schick Reply Decl., Exs. N, O.  As of June 26, half of the State's regions are in Phase Four.  *Id.* at Ex. P.  All camps in this case are in regions that are already or very shortly will be in Phase 4.  Frischman Decl. ¶ 19.

Rather than explain how these activities supposedly do not raise the same or greater risks of transmission of COVID-19, Defendant states in a footnote that such conduct is "not comparable to overnight camps," Def. Br. 15 n.7.  Defendant also dismisses without explanation Judge Sharpe's finding that such exemptions are comparable to houses of worship.  *Id.* at 19–20.

The permitted secular activities and overnight camps similarly constitute gatherings of individuals for a prolonged period of time, which Defendant contends generates "the highest risk of transmission" of COVID-19.  *Id.* at 17.  Defendant's reliance on a rare inflammatory syndrome, the movement of children to camps, and a 2009 flu outbreak, *see id.* at 14, 17–18, raise the same or greater risks for day camps and child care services.  Indeed, those activities involve daily travel and interaction with at-home communities, which "would seem to pose a far greater risk of infection for children."  Berman Decl. ¶ 29.  Nor can Defendant's generic reference to overnight camps' sleeping and eating arrangements, without any evidence in support thereof, justify his

refusal to accommodate Jewish overnight camps.  Berman Reply Decl. ¶¶ 3–4, 7.  Defendant exempts higher education from the restrictions, which raises identical concerns.  The State's guidelines for higher education show that it believes programs can take sufficient precautions to safeguard against COVID-19.  Schick Reply Decl., Ex. Q; *see also Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020).  Defendant fails to show (or even mention) how such protocols, summarized below, would not similarly guard overnight camps.  Berman Reply Decl. ¶¶ 4, 6–7.

| Day Camps & Child Care Services | Higher Education |
|---|---|
| Face covering required for staff when not social distancing | Face covering required for all when not social distancing (not in residences/dorm rooms) |
| Limit 15 children per grouping (not including employees) and interaction among groupings | 50% capacity limitation for indoor spaces |
| Train staff on personal protective equipment | Train staff on personal protective equipment |
| Adhere to CDC hygiene and cleaning rules | Adhere to CDC hygiene and cleaning rules |
| Provide hand hygiene stations and require individuals practice hygiene throughout day | Provide hand hygiene stations |
| Screen symptoms and isolate as necessary | Screen symptoms and isolate as necessary |
| Communicate safety plans to individuals | Communicate safety plans to individuals |
| Prohibit non-essential visitors | Work with local health department to isolate and care for exposed or infected students |

Schick Reply Decl., Exs. Q; R.[1]  Defendant likewise ignores Jewish overnight camps' protocols, Berman Reply Decl. ¶¶ 4–7, that are more protective than these designed for secular activities.

By exempting First Amendment activity that he favors, as well as comparable secular activity that raise the same or greater COVID-19 concerns as Jewish overnight camps, Defendant has "refuse[d] to extend that system to cases of religious hardship without compelling reason." *Lukumi*, 508 U.S. at 537.  His refusal to extend a similar accommodation to Jewish overnight camps proves "discriminatory treatment;" he "judg[es] them to be of lesser import than nonreligious reasons."  *Id.* at 537–38.  Defendant's blanket restrictions likewise are not generally

---

[1] The Health Department issued this revised day camp and child care guidance on June 26, 2020.

applicable, as exemptions for comparable secular conduct that raise risks "in a similar or greater degree than" overnight camps prove the restriction's "underinclusive" nature.  *Id.* at 543.

Plaintiffs do not claim that Defendant's selective enforcement of his restrictions "forfeit[s Defendant's] ability to enforce all executive orders."  Def. Br. 14.  Rather, Defendant's "system of individualized exemptions, the antithesis of a neutral and generally applicable policy," requires that the law "run the gauntlet of strict scrutiny," *Roberts*, 958 F.3d at 413–14, to prove that its infringement on *religious rights*, in particular, "advance[s] 'interests of the highest order' and [is] narrowly tailored in pursuit of those interests," *Lukumi*, 508 U.S. at 546 (citation omitted). Plaintiffs "just want to be treated equally" to permitted secular conduct while adhering to *more* protective health protocols than Defendant requires of that conduct.  *Roberts*, 958 F.3d at 414. Defendant does not argue his conduct satisfies strict scrutiny, nor could it.

## B.    The Prohibition of Overnight Camps Is Not Neutral

Defendant's ban is also "not neutral" for the reason that "the religious ritual it regulates is 'the only conduct subject to' the" restriction.  *Cent. Rabbinical*, 763 F.3d at 195 (quoting *Lukumi*, 508 U.S. at 535).  Defendant does not dispute that Jewish overnight camps were the only such camps attempting to operate this summer by the time of his announcement.  Frischman Decl. ¶¶ 3– 5.  Jewish overnight camps thus are "the only presently known conduct covered by" Defendant's closure.  *Cent. Rabbinical*, 763 F.3d at 195 (citation omitted).  Although Defendant contends that "the prohibition against the operation of overnight camps is neutral on its face," Def. Br. 18, "'[f]acial neutrality is not determinative,'" *Cent. Rabbinical*, 763 F.3d at 193 (quoting *Lukumi*, 508 U.S. at 534).  A regulation must be "'neutral in 'operation,' as assessed in 'practical terms.'" *Id.* at 194–95 (quoting *Lukumi*, 508 U.S. at 535–36).  Because "the burdens of the [closure] fall on

only a particular religious group – and in fact *exclusively* on members of one particular subset of that religious group," the ban is a "targeted non-neutral law" triggering strict scrutiny. *Id.* at 196.

Here, Defendant wrongly cites *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), and *South Bay United Pentecostal Church v. Newsom*, 2020 U.S. LEXIS 3041 (May 29, 2020), as allowing the Court to sidestep First Amendment scrutiny.  The Second Circuit has held that *Jacobson* does not alter traditional Free Exercise scrutiny; strict scrutiny applies unless the law is neutral and generally applicable.  *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015); *see also Roberts*, 958 F.3d at 413–15.  Defendant simply ignores *Phillips*.  Nor is *South Bay* "dispositive."  Def. Br. 13.  The Court did not issue a majority opinion in its emergency application denial, and Chief Justice Roberts' concurrence cited *Jacobson* only after concluding that the restrictions were non-discriminatory.  *S. Bay*, 2020 U.S. LEXIS 3041, at *2–3.  Even so, Defendant's exemptions for other First Amendment activities and similar secular conduct, while enforcing the same restrictions against Jewish overnight camps, is "arbitrary and oppressive" and a "palpable invasion of rights secured by the fundamental law[.]"  *Jacobson*, 197 U.S. at 31, 38.

## II.    Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief

As in *Soos*, Defendant seeks to avoid the presumption of irreparable harm by arguing that Plaintiffs remain free to practice their religion in another manner of Defendant's choosing or can do so "next summer."  Def. Br. 22–23.  The undisputed evidence is that overnight camps offer an "immersive" environment that "present[s] opportunities for spiritual growth that are not available elsewhere."  Sherman Decl. ¶¶ 4–7.  By removing outside influences and allowing children to live with Jewish role models and engage in "holistic" daily prayer, rituals, and guidance, Frischman Decl. ¶¶ 8–10; Schwartz Decl. ¶¶ 9–12, Jewish overnight camps provide "opportunities [ ] not readily available outside the overnight camp environment," *id.* at ¶ 9.  Camp Sabbath in particular

is a "life-altering experience for many campers" that is not available outside overnight camps. *Id.* at ¶¶ 9–10. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 473 (1976).

### III.   The Balance of the Hardships and the Public Interest Favor Plaintiffs

Defendant contends generically that the Court should defer to his COVID-19 response, Def. Br. 23, but cannot establish that his interests would suffer meaningful harm if the Court issues an injunction.  Defendant does not address the overnight camps' protocols that render them safer than comparable secular activity or explain why the State's protocols for day camps and higher education would not similarly be sufficient to safeguard overnight camps.  Plaintiffs ask only that their religiously-motivated desire for an immersive Jewish environment for their children be subject to the same rules. The requested injunction secures First Amendment rights and promotes the public interest.  *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

### IV.   Defendant Is Not Entitled to Legislative Immunity

Defendant's cursory legislative immunity argument fails because executive orders do not constitute legislation. Defendant does not cite a single case suggesting that an executive order is legislation, and none exists.  The "legislative power of this State shall be vested in the Senate and the Assembly," N.Y. CONST. art. III, § 1, and separation of powers prevents the Legislature from "pass[ing] on its law-making functions to other bodies," *Levine v. Whalen*, 39 N.Y.2d 510, 515 (1976).  "A law may be enacted only by a legislative body, which the executive clearly is not." *Clark v. Cuomo*, 66 N.Y.2d 185, 191 (1985).  Defendant only "has the power to *enforce* legislation," otherwise, he violates the separation of powers.  *Rapp v. Carey*, 44 N.Y.2d 157, 163 (1978); *see also City & Cty. of San Fran. v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018).

## CONCLUSION

The Court should grant a temporary restraining order and preliminary injunction that prohibits Defendant from holding Jewish overnight camps to a different standard than he has applied to permitted activities such as day camps, child care, and higher education institutions.

This 29th day of June, 2020.

/s/ Avi Schick
Avi Schick
avi.schick@troutman.com

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
(212) 704-6000

Misha Tseytlin (WI Bar No. 102199)
misha.tseytlin@troutman.com
*Pro Hac Vice Pending

TROUTMAN SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL  60606
(312) 759-1920

W. Alex Smith (Ga. Bar No. 532647)
alex.smith@troutman.com
*Pro Hac Vice Pending

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia  30308
(404) 885-3000

*Attorneys for Plaintiffs*