# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

Association of Jewish Camp Operators,

Samuel Werzberger, MD, FAAP,

Ariela Orkaby, MD, MPH,

Beth Statfeld,

Gail Zahtz,

      *Plaintiffs*,

v.

Andrew M. Cuomo, Governor of the State of New York, in his official capacity,

      *Defendant*.

Case No. 1:20-CV-0687 (GLS-DJS)

## DECLARATION OF DANIEL S. BERMAN, MD

Pursuant to 28 U.S.C. § 1746, I, Daniel S. Berman, MD, hereby declare as follows:

1. I make this additional declaration for use as evidence in support of Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction, and I incorporate herein my original declaration, executed on June 21, 2020, filed in support thereof. I offer this medical opinion on behalf of myself and not on behalf of Montefiore Medical Center.

2. I have reviewed the Declaration of Mr. Brad Hutton, Deputy Commissioner of the Office of Public Health at the New York State Department of Health, submitted on June 26, 2020 in support of Defendant's Opposition to Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction. For the reasons below, I disagree with Mr. Hutton's conclusions that overnight camps present a dangerous setting for the transmission of COVID-19.

3. In support of his opinion that overnight camps present a prohibitively dangerous setting in the wake of COVID-19, Mr. Hutton focuses on the risks of individuals sharing a sleeping area for many hours each night. Hutton Declaration ¶ 63. Yet Mr. Hutton cites no evidence in support of his opinion that sleeping in a confined area creates additional risk of transmission of COVID-19. Rather, the Centers for Disease Control and Prevention ("CDC"), in its "Suggestions for Youth and Summer Camps," updated June 25, 2020, recommends that overnight camps simply "[a]lign mats or beds so that campers and staff sleep head to toe at least 6 feet apart" to guard against any such risk of transmission. *Coronavirus Disease 2019 (COVID-19): Suggestions for Youth and Summer Camps*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/summer-camps.html. The CDC's guidelines do not recommend, or even suggest, prohibiting overnight camps.

4. Mr. Hutton likewise cites generically the "congregate settings" of overnight camps as creating a risk unique to overnight camps. Hutton Declaration ¶ 63. Mr. Hutton again fails to disclose how these settings present a risk for the transmission of COVID-19 sufficient to justify a total ban of the camps, nor does he explain how the Jewish overnight camps' safety protocols would not sufficiently guard against any such concern for "congregate settings." Mr. Hutton fails entirely to address how the "congregate settings" of overnight camps differ from other activity that the State permits, such as day camps, child care services, and higher education institutions, nor does Mr. Hutton address how the protocols that the New York State Health Department requires of such activities would not sufficiently address his "congregate settings" concern for overnight camps.

5. Mr. Hutton also states that overnight camps present a significant danger because children likely will bring COVID-19 to overnight camps, spread it to the nearby local community,

and overwhelm camp staff. Hutton Declaration ¶¶ 64–66. Mr. Hutton simply ignores the Jewish overnight camps' stringent health and safety protocols, discussed thoroughly in my original Declaration, that implement a strict screening process through antibody and COVID-19 testing to avoid the entry of infected campers or staff members to camp. Berman Declaration ¶¶ 10–17. Nor does Mr. Hutton dispute, or even grapple with, the "minuscule likelihood" of an infected individual entering camp given the current COVID-19 data, as discussed in my original Declaration. *Id.* at ¶¶ 7–9. Such an outbreak thus is exceedingly unlikely.

6. Even if an individual did bring COVID-19 to camp, the camps would have almost total separation from the outside community and would adhere to rigorous protocols, as do other activities that the State permits, to safeguard against the spread of the virus. *Id.* at ¶¶ 18. Mr. Hutton does not even attempt to explain how these protocols, or the Health Department's protocols for day camps, child care services, and higher education institutions, would not sufficiently safeguard against these concerns. Nor does Mr. Hutton dispute the limited prevalence and low severity of illness of COVID-19 in children. *Id.* at ¶¶ 19–27.

7. In conclusion, Mr. Hutton provides no evidentiary basis for his generic concerns of the dangers of overnight camps. He does not explain (much less mention) the Jewish overnight camps' stringent health and safety protocols designed to prevent the introduction and spread of COVID-19 at overnight camps or explain why such protocols would not be sufficient to address his groundless concerns. Nor does Mr. Hutton provide any justification for why the Health Department's safety guidelines for conduct similar to overnight camps, such as day camps, child care services, and higher education institutions, would not be sufficient to safeguard campers and staff from the concerns that he raises.

8. For the reasons discussed in my original declaration and herein, it is my opinion that there is almost a nonexistent chance of a serious outbreak of COVID-19 in camp.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 28, 2020.

_____
Daniel S. Berman, MD